OPINION
{¶ 1} Appellant, Fernando Montes, appeals from a judgment of the Lake County Court of Common Pleas, denying his motion to suppress. For the reasons that follow, we affirm.
 {¶ 2} The record discloses the following facts. On November 1, 2002, appellant was indicted by the Lake County Grand Jury for driving under the influence of alcohol or drugs, in violation of R.C. 4511.19(A)(1), and for the assault of a peace officer while in performance of his official duties, a violation of R.C.2903.13(A). These charges resulted from a traffic stop conducted by police officer John R. Vecchione, Jr. ("Officer Vecchione"), of the Mentor Police Depatment.
 {¶ 3} Appellant waived his right to be present at his arraignment. Thereafter, the court entered a plea of not guilty to all charges.
 {¶ 4} On December 10, 2002, appellant filed a motion to suppress. The motion argued that any evidence resulting from Officer Vecchione's traffic stop should be excluded from trial. In support of his argument, appellant maintained that Officer Vecchione did not have the necessary probable cause or specific, articulable facts upon which to base a seizure of appellant's person or his vehicle. Thus, appellant concluded that any evidence obtained was in violation of his right against an unreasonable search and seizure as guaranteed by the Fourth,Fifth, and Fourteenth Amendments to the United States Constitution and Sections 10 and 14, Article I, of the Ohio Constitution.
 {¶ 5} Following the prosecution's response, a hearing was held at which Officer Vecchione was the sole witness. During the hearing, Officer Vecchione testified that on June 15, 2002, at approximately 3:10 a.m., he observed a Chevy Silverado traveling westbound on Mentor Avenue near the intersection of State Route 306. Officer Vecchione described Mentor Avenue as having four lanes, two individual eastbound lanes and two individual westbound lanes. He stated that each individual westbound lane and eastbound lane was divided by a white striped line, while the collective eastbound lanes and westbound lanes were separated by a solid yellow line. Each lane was a standard ten-foot traffic lane. He further noted that, at the intersection of State Route 306 and Mentor Avenue, there was an additional left-hand turn lane. Officer Vecchione described the portion of Mentor Avenue upon which the Chevy Silverado was driving as "well lit" and "straight and level" with a slight curve just past the State Route 306 intersection.
 {¶ 6} Officer Vecchione testified that the Chevy Silverado was traveling in the westbound curb lane of Mentor Avenue and was not speeding. However, he further testified that on two or three separate occasions the Chevy Silverado "drifted" approximately twelve inches across the white striped line dividing the individual westbound lanes. He described the vehicle's drifting as continuous and within a short distance.
 {¶ 7} As a result of the Chevy Silverado's drifting into the outside westbound lane, Officer Vecchione activated his police car's overhead lights and siren, signaling the vehicle to stop. Officer Vecchione testified that the initial reason for the stop was to issue a citation for a marked lane violation under R.C.4511.33. Despite the signal to stop, the Chevy Silverado did not pull over for another quarter of a mile. Officer Vecchione's in-court testimony identified appellant as the driver of the vehicle.
 {¶ 8} There was no evidence presented during the suppression hearing which related to the factual events subsequent to the initial stop. Accordingly, there was no evidence of the circumstances which led to Officer Vecchione's reasonable suspicion that appellant was driving under the influence or those facts depicting appellant's assault of Officer Vecchione. This evidence was not presented because appellant's motion to suppress merely challenged Officer Vecchione's reasons for the initial stop.
 {¶ 9} Following the hearing, the court issued a judgment entry denying appellant's motion to suppress. Thereafter, appellant pleaded no contest to both counts of the indictment. Based upon the prosecution's recitation of facts, the trial court published a judgment entry finding appellant guilty of assault and driving under the influence. Appellant was sentenced to serve consecutive sixty-day terms of incarceration for each charge and to complete various rehabilitation programs. Furthermore, the trial court suspended appellant's driver's license for three years and his driving record was assessed six points.
 {¶ 10} From this judgment, appellant filed a timely appeal and now sets forth the following assignment of error for our review:
 {¶ 11} "The trial court erred to the prejudice of the defendant-appellant when it denied his motion to suppress where the seizure of the defendant-Appellant was made absent any specific and articulable facts indicating the presence of criminal activity."
 {¶ 12} As a brief aside, we first note that appellant's plea of no contest does not act to waive his assigned error on appeal. Unlike a plea of guilty, a plea of no contest does not operate as a waiver of any trial court error concerning the suppression of evidence. State v. Brown, 11th Dist. No. 2001-P-0055, 2001-Ohio-8825, 2001 Ohio App. LEXIS 5862, at 4.
 {¶ 13} Under his sole assignment of error, appellant contends that Officer Vecchione had no probable cause or specific, articulable facts to validate a traffic stop and seizure. Specifically, appellant maintains that Officer Vecchione's observation of appellant's vehicle drifting into the adjacent westbound lane, standing alone, did not justify an investigatory traffic stop. Appellant argues that the stop violated his constitutionally guaranteed right to due process and his right against an unreasonable search and seizure. Thus, appellant concludes that any evidence obtained as a result of the unlawful search and seizure should have been suppressed.
 {¶ 14} That being said, we will now set forth the appropriate standard of review. At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366;State v. Smith (1991), 61 Ohio St.3d 284, 288.
 {¶ 15} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002-Ohio-1337, 2002 Ohio App. LEXIS 1345.
 {¶ 16} Because appellant's sole assignment of error contests the validity of a police officer's investigatory stop, it is necessary to review the relevant principles of law that govern this matter. A proper investigative stop by a police officer acts as an exception to the Fourth Amendment warrant requirement. See, e.g., State v. Gedeon (1992), 81 Ohio App.3d 617, 618. To effectuate a constitutionally valid investigative stop, the police officer must have a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. Terry v. Ohio (1968), 392 U.S. 1, 21. "In the context of a traffic stop, the police officer must have reasonable and articulable suspicion that the motorist is operating a vehicle in violation of the law." State v. Carleton
(Dec. 18, 1998), 11th Dist. No. 97-G-2112, 1998 Ohio App. LEXIS 6163, at 7-8, citing Delaware v. Prouse (1979), 440 U.S. 648.
 {¶ 17} To determine the propriety of the investigative stop, a court must examine the totality of the circumstances which provided the basis of the officer's suspicion to warrant an inquiry by the police. State v. Bobo (1988), 37 Ohio St.3d 177. The prosecution bears the burden of going forward with evidence "to fully develop the circumstances to justify a non-warrant seizure." State v. Gullett (1992), 78 Ohio App.3d 138, 145.
 {¶ 18} In State v. Yemma (Aug. 9, 1996), 11th Dist. No 95-P-0156, 1996 Ohio App. LEXIS 3361, at 6-8, we stated:
 {¶ 19} "This court has repeatedly held that a minor violation of a traffic regulation * * * that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation. * * *
 {¶ 20} "Once the officer has stopped the vehicle for some minor traffic offense and begins the process of obtaining the offender's license and registration, the officer may then proceed to investigate the detainee for driving under the influence if he or she has a reasonable suspicion that the detainee may be intoxicated based on specific and articulable facts, such as where there are clear symptoms that the detainee is intoxicated." (Citations and footnote omitted.) See, also, State v. Haynes,
11th Dist. No. 2003-A-0055, 2004-Ohio-3514, at ¶ 14.
 {¶ 21} After reviewing the facts of the instant case, it is apparent that Officer Vecchione had probable cause to effect the stop of appellant's vehicle based upon a traffic code violation. See, e.g., Carleton at 8.
 {¶ 22} Officer Vecchione's testimony revealed that his stop of appellant's vehicle was based upon appellant's violation of R.C. 4511.33(A). R.C. 4511.33(A)(1) states:
 {¶ 23} "Whenever any roadway has been divided into two or more clearly marked lanes for traffic, or wherever within municipal corporations traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following rules apply:
 {¶ 24} "(1) A vehicle or trackless trolley shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
 {¶ 25} Officer Vecchione testified that appellant's vehicle drifted out of the westbound curbside lane, crossing the marked adjacent westbound lane by approximately one foot, on two or three separate occasions. Moreover, the facts of the case at bar further justify the stop, as Officer Vecchione's testimony made clear that appellant's drifting was continuous and within a short distance. Accordingly, Officer Vecchione's observations of appellant's continuous drifting over the marked westbound lane, within a short distance, justified Officer Vecchione's stop based upon a marked lane violation under R.C. 4511.33(A)(1). See, e.g., Carleton at 11-12. See, also, State v. Brummett (Mar. 28, 1997), 11th Dist. No. 95-L-163, 1997 Ohio App. LEXIS 1219.
 {¶ 26} Moreover, Officer Vecchione testified on direct and cross-examination that there were no extenuating circumstances that would justify appellant's marked lane violation, to wit:
 {¶ 27} "Q: And what is the violation that you're aware of?
 {¶ 28} "A: It's a marked lane violation. The law says you have to stay entirely within your own lane when traveling.
 {¶ 29} "Q: Okay. As much as practically possible you're to remain in your own lane?
 {¶ 30} "A: Correct.
 {¶ 31} "Q: Can you see anything reasonably possible in the roadway that would provide an explanation why his vehicle, like an animal or obstacle, offer an explanation as to why [appellant] was drifting over the white line?
 {¶ 32} "A: There would be no explanation. I was behind him the whole time and never had to leave my lane."
 {¶ 33} The foregoing demonstrates that there was no evidence of an external force that would have caused appellant to drift back and forth across the marked lane. Therefore, appellant was unable to justify his violation by demonstrating that it was not practicable to stay within his own lane.
 {¶ 34} Because there was competent, credible evidence demonstrating a violation of R.C. 4511.33(A)(1), Officer Vecchione's stop of appellant's vehicle to issue a marked lane violation was justified and constitutionally valid. We need not determine whether Officer Vecchione had a sufficient reasonable suspicion of alcohol use following the stop, as this issue was never challenged by appellant's motion to suppress or on appeal.
 {¶ 35} Nevertheless, appellant cites to three separate cases in which appellate courts determined that a police officer's investigatory stop of a vehicle was not constitutionally valid and, therefore, the evidence resulting from such stop was suppressed. After careful examination, we find each case to be distinguishable from the instant case.
 {¶ 36} First, in Gullett, the Fourth Appellate District determined that, based upon the totality of the circumstances, the investigatory stop of a vehicle was not justified by sufficient articulable facts. Id. at 145. The facts in Gullet
demonstrated that the police officer stopped the defendant's vehicle after observing the vehicle cross the traffic lane's white edge line on two separate occasions. Id. at 140. These two separate incidents of weaving occurred over a distance of approximately a mile and a half. Id. No further evidence of erratic driving was established. Id. at 141. Based upon the investigatory stop, the defendant was charged with a marked lane violation, in violation of R.C. 4511.33(A), and driving under the influence, in violation of R.C. 4511.19(A)(1). Id.
 {¶ 37} In Gullett, the prosecution argued that the defendant's violation of R.C. 4511.33 justified the stop. Despite the provisions of R.C. 4511.33, the Gullett court based its holding solely upon the state's failure to present sufficient evidence of the circumstances surrounding the stop, to wit:
 {¶ 38} "[I]t does not follow that every crossing of the edge line, regardless of circumstances, constitutionally justifies a stop. Since a stop is per se unreasonable, it was incumbent on [the state] to fully develop the circumstances to justify a non-warrant seizure. The evidence does not disclose if the initial crossing was only momentary or how far the line was crossed." Id. at 145.
 {¶ 39} Accordingly, the Gullett court held that, based upon the state's failure to fully develop the surrounding circumstances of the stop, the trial court had properly sustained the defendant's motion to suppress. Id.
 {¶ 40} The instant case is distinguishable from Gullett, as the testimony of Officer Vecchione fully developed the circumstances of the stop. Specifically, Officer Vecchione testified as follows:
 {¶ 41} "A: [Appellant] would drive, drive in the curb lane and then drift over a foot into the other westbound lane, stay there for a few seconds and then drift back fully into the curb lane and then drift over into the westbound lane a few seconds then drift back."
 {¶ 42} The following testimony depicts a constant, momentary drifting across the westbound white line over a short distance. As mentioned previously, Officer Vecchione specifically testified that appellant's vehicle crossed the white line two or three times. Furthermore, Officer Vecchione adequately described the physical aspects of the road and the neighboring area. His testimony established that the area of Mentor Road at which he witnessed appellant cross the marked lines was well lit, straight, and level. Thus, unlike Gullett, the state fully developed the surrounding circumstances of Officer Vecchione's stop.
 {¶ 43} Next, in State v. Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 Ohio App. LEXIS 2649, this court determined that a police officer's investigatory stop for weaving was not proper and concluded that any evidence resulting from the stop should have been suppressed. In Spikes, however, the defendant was not stopped for a traffic code violation; rather, the stop was predicated solely upon the police officer's suspicion that the driver of the vehicle was intoxicated. Id. at 2. Furthermore, "the only testimony offered [was] that [the defendant's] tires struck or crossed over the right hand white line four times in a distance of three miles." Id. at 8-9. We ultimately determined that, based upon the totality of the circumstances, the defendant's driving was not so erratic as to warrant an investigative stop. Id. at 12.
 {¶ 44} Again, the facts of the instant case are distinguishable from those of Spikes. In the case at bar, Officer Vecchione's initial stop of appellant's vehicle was a result of a marked lane violation, rather than his suspicion that appellant was an impaired driver. The requisite reasonable suspicion that appellant was under the influence of alcohol occurred after appellant was stopped for the marked lane violation. As mentioned previously, appellant only challenged the validity of Officer Vecchione's initial stop, and there was no further evidence relating to the events subsequent to the stop. Thus, because Officer Vechhione's stop was based upon a marked lane violation, rather than a reasonable suspicion that appellant was driving while intoxicated, our holding in Spikes is inapplicable to the case at bar.
 {¶ 45} Finally, appellant cites to State v. Worthy (Dec. 1, 2000), 11th Dist. No. 99-L-063, 2000 Ohio App. LEXIS 5612. InWorthy, this court held that, despite the provisions of R.C.4511.33(A), "a de minimis marked lane violation, without other evidence of impairment, does not justify an investigative stop." Id. at 3-4. The facts of Worthy established that the police officer observed the defendant's vehicle, on a single occasion, partially cross into a separate eastbound lane. Id. at 1. "There was no testimony that [the defendant] had been speeding, weaving, or in any way driving in an erratic manner." Id. at 4. Therefore, we concluded that the investigatory stop was not justified. Id. at 5.
 {¶ 46} In the case sub judice, the record discloses that appellant's vehicle did in fact engage in multiple instances of weaving. As described by Officer Vecchione, appellant's vehicle weaved in and out of its westbound lane on two or three separate occasions. Such weaving occurred over a short distance and was continuous in nature. Thus, appellant's marked lane violation, although minor, was not de minimus.
 {¶ 47} The instant case is factually distinguishable fromGullet, Spikes, and Worthy. A more factually parallel case is Carleton. In Carleton, this court determined that the defendant's weaving over the white edge line twice, within a short distance, resulted in a marked lane violation, thereby creating probable cause for the initial stop. Id. at 11-12. Thus, we determined that the trial court had properly denied the defendant's motion to suppress, as the police officer's initial stop was constitutionally valid. Id.
 {¶ 48} The state has established that Officer Vecchione had probable cause to stop appellant's vehicle based upon a marked lane violation. Thus, appellant's stop was constitutionally valid. Appellant's sole assignment of error is without merit. We hereby affirm the judgment of the trial court.
O'Neill, J., Grendell, J., concur.