{¶ 27} I respectfully dissent from the majority.
 {¶ 28} The video from the dashboard camera was admitted as an exhibit. It verified Officer Mescall's testimony as to the surrounding circumstances of the traffic stop. It is unclear from the video whether the vehicle ever completely crossed the yellow line or merely drove upon it. Moreover, the video established that after appellee touched/crossed the lines, he adequately navigated his vehicle down sloping curves without incident.
 {¶ 29} Following the hearing, the trial court issued a judgment entry granting appellee's motion to suppress. That court determined Officer Mescall's traffic stop was improper and any evidence resulting from it should be suppressed. The court noted it had visited and measured Baldwin Road, and confirmed that the traffic lane was ninety-two to ninety-four inches wide. The court stated that Officer Mescall "may have concluded that [appellee] was impaired. However, the ability of [appellee] to negotiate the subsequent hill and curves correctly should forstay any notion of impairment and the initial stop was invalid." I would uphold the ruling of the trial court.
 {¶ 30} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v.Mills (1992), 62 Ohio St.3d 357, 366; State v. Smith (1991),61 Ohio St.3d 284, 288.
 {¶ 31} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent and credible evidence. State v. Retherford (1994),93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must independently determine, as a matter of law, whether the applicable legal standard has been met. Id. at 592. See, also, State v. Swank (Mar. 22, 2002), 11th Dist. No. 2001-L-054, 2002-Ohio-1337, at 8. The majority is disregarding the trial court's role as factfinder.
 {¶ 32} The Fourth Amendment guarantees individuals the right to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures. A temporary detention of an individual during a police officer's automobile stop, no matter how brief or limited in purpose, constitutes a "seizure" of the individual under the Fourth Amendment. Delaware v.Prouse (1979), 440 U.S. 648, 653. Hence, if the surrounding circumstances establish that an automobile stop is unreasonable, then the stop violates the individual's constitutional right to be secure in his or her person. Id. at 659.
 {¶ 33} Whether a traffic stop violates the Fourth Amendment requires an objective assessment of a police officer's actions at the time of the stop, in light of the facts and circumstances then known to the officer. United States v. Ferguson (6th Cir. 1993), 8 F.3d 385, 388. The police officer's subjective motivation for initiating the stop is irrelevant to this analysis. Dayton v. Erickson (1996), 76 Ohio St.3d 3, 6.
 {¶ 34} That being said, if the surrounding circumstances establish that a police officer witnessed an individual violate a traffic law, the officer has probable cause to affect a constitutional stop. State v. Montes, 11th Dist. No. 2003-L-072, 2004-Ohio-6475, at ¶¶ 21-25. See, also, State v.Carleton (Dec. 18, 1998), 11th Dist. No. 97-G-2112, 1998 Ohio App. LEXIS 6163, at 8-9. Following the stop, the officer may proceed to investigate the detained individual for DUI if the officer has a reasonable suspicion that the individual may be intoxicated based upon specific and articulable facts. Montes
at ¶ 20.
 {¶ 35} In the case sub judice, the trial court's decision granting appellee's motion to suppress determined that Officer Mescall did not have probable cause to initiate a stop of appellee's vehicle. The court cited State v. Gullet (1992),78 Ohio App.3d 138, in determining that appellee's alleged traveling over marked lanes was not a reasonable justification to initiate the stop, absent other articulable facts.
 {¶ 36} Furthermore, "although the appellate courts of this state are in general agreement that not every edge line crossingby a motorist permits police to conduct a traffic stop, instancesof erratic or substantial roadway line crossing will vest apolice officer with probable cause to perform such a stop." (Emphasis added.) State v. Schofield (Dec. 10, 1999), 11th Dist. No. 98-P-0099, 1999 Ohio App. LEXIS 5945, at 9. "* * * [T]here must be some indicia of erratic driving to warrant an investigative stop beyond some incident of modest or minimal weaving in one's lane alone." State v. Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 Ohio App. LEXIS 2649, at 10. Thus, "police officers may lawfully stop a motor vehicle solely on the basis that the vehicle is weaving, but only when the extent of the weaving [is] what can be described as substantial." (Emphasis added.) Willoughby v. Zvonko Mazura (Sept. 30, 1999), 11th Dist. No. 98-L-012, 1999 Ohio App. LEXIS 4642, at 8.
 {¶ 37} To justify his stop in this case, the police officer also charged appellee with a marked lanes violation of the Kirtland Hills ordinance mirroring R.C. 4511.33, to wit:
 {¶ 38} "(a) Whenever any roadway has been divided into two or more clearly marked lanes for traffic or wherever traffic is lawfully moving in two or more substantially continuous lines in the same direction, the following apply:
 {¶ 39} "(1) A vehicle shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."
 {¶ 40} Contrary to the state's assertion that failure to drive in a marked lane is an automatic violation, the statute itself permits the driver discretion to cross marked lanes if the driver ascertains the movement can be made safely. The trial court's findings of fact in this matter are correct. The driver moved outside his lane, but did so when he was alone, and did not do so erratically. In fact, the driver demonstrated skill and proper speed when negotiating sharp curves immediately thereafter. The trial court evaluated the driver's de minimus lane infringement as being within a safe driver's discretion. The court correctly identified the aggressive attempt of law enforcement personnel to detect and control such offenses as driving under the influence. We must defer to the trial court's findings.
 {¶ 41} The traffic code exists to protect all citizens using our roadways; its overriding purpose is to allow the safe operation of motor vehicles. It does not impose strict liability and an automatic violation every time someone goes slightly outside their lane. It is up to the trial court to determine if a violation of both aspects of the statute has occurred, i.e., that a lane has been crossed, and that it was unsafe to do so. In this case, the trial court determined that there was no lane violation, as the driver was able to control his car safely, vitiating the second element of the statute. The trial court said as much in its findings of fact and its conclusions of law. I disagree that this case needs to be remanded so the trial court can incant "the driver operated his car safely therefore there is no marked lane violation" (and thus, no probable cause for a traffic stop). Citizens do not throw their Fourth Amendment right against illegal search and seizure out the car window simply because they drive. The statute provides for some discretion in operating a motor vehicle. It is not a pretext providing probable cause for DUI stops.
 {¶ 42} Appellant argues that even a de minimus traffic violation provides a police officer with the requisite probable cause to stop a vehicle. Appellant cuts its argument to fitErickson. Erickson is not about de minimus violations. It is about drivers committing an actual violation which includes objectively unsafe operation of a motor vehicle. Police cannot just follow a driver in the knowledge that eventually an over the line error will occur, allowing them to swoop in and evaluate the driver for intoxication. Police have the authority to stop motorists for probable cause for drunk driving. They do not need to disguise a DUI stop as a marked lane violation. The common habits of all drivers in going down steep hills, negotiating narrow roads, drifting to the right while adjusting the radio in the middle of the night, and keeping toward the center to avoid a dark and dangerous soft shoulder should not precipitate a traffic stop. I agree with the trial court: for a true violation of the traffic code to occur, when the statute in question gives a driver discretion take an action when it is safe to do so, then unsafe operation must be shown.
 {¶ 43} In Erickson at 11-12, the Supreme Court of Ohio concluded that minor traffic violations provide probable cause for a police stop. It did not conclude that the police could stop motorists who did not violate the traffic laws. For a marked lane violation to occur, two elements must be shown: (1) the crossing of a marked lane; and, (2) that the crossing of the lane was unsafe. In this case, the trial court determined that the second element was not shown by the evidence. Therefore, there was no traffic violation, and no probable cause to stop. The majority's analysis simply skips over this vital point, and ignores the definition of the law as written by the General Assembly.
 {¶ 44} My independent examination of the relevant law and the video has established that the applicable legal standard for suppression has been met. Thus, the trial court did not err in granting appellee's motion.
 {¶ 45} I hereby dissent respectfully from the judgment of the majority.