OPINION
{¶ 1} Appellant, the state of Ohio, appeals from the judgment entry of the Ashtabula County Court, Eastern Division, granting in part appellee Calvin Steerman's motion to suppress evidence. At issue is whether the trial court properly suppressed the results of a breathalyzer test and certain oral statements made by appellee. For the reasons that follow, we modify the trial court's judgment and affirm that judgment as modified. *Page 2 
 {¶ 2} On December 4, 2006, a traffic citation was filed in the Ashtabula County Court, Eastern Division, charging appellee with operating a motor vehicle under the influence of alcohol ("OVI"), a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a), and operating a motor vehicle with a prohibited concentration of alcohol in his breath, a misdemeanor of the first degree, in violation of R.C.4511.19(A)(1)(d). Appellee entered a plea of not guilty at his arraignment. On April 25, 2007, appellee filed a motion to suppress. On June 22, 2007, appellant filed its response. On June 25, 2007, the trial court conducted a hearing on appellee's motion.
 {¶ 3} Trooper Jason Hayes of the Ohio State Highway Patrol testified that on December 2, 2006, at approximately 1:04 a.m., he was dispatched to respond to the scene of a one-vehicle crash on State Route 46 in Jefferson Township at the Oasis Bar. He arrived at the scene at 1:11 a.m. As he drove by the bar, the trooper saw a vehicle that looked like it had been attempting to leave the parking lot, but had been driven up on a guide wire to a telephone pole. At that time the vehicle was resting on the guide wire.
 {¶ 4} As Trooper Hayes pulled into the Oasis parking lot, he saw a white male, later identified as appellee, running behind the bar. Appellee attempted to hide behind a bush. The trooper exited his cruiser and yelled, "stop where you're at, I can see you." Appellee then came out from behind the bush, and said, "okay, you got me." The trooper testified that appellee was staggering and his speech was slurred. His eyes were bloodshot and glossy, and he had a strong odor of alcohol on his breath. The trooper testified he placed appellee in the back seat of his patrol car, and asked him what happened. Appellee said his "throttle got stuck." He further said he was coming around the building when it happened. After the trooper completed his questioning of *Page 3 
appellee, he left him in the vehicle while he went outside to investigate the path appellee took in exiting the parking lot. The trooper testified that because the crash had not occurred on the roadway, he had his dispatcher call the Ashtabula County Sheriffs Office to have officers from that office respond.
 {¶ 5} Trooper Hayes testified that when he placed appellee in his cruiser, he was not free to leave, although he did not handcuff him. He testified appellee was not under arrest at that time, and his intent was to investigate the crash to determine what had happened.
 {¶ 6} Sgt. Robert Slocum of the Ashtabula County Sheriffs Office testified that he was dispatched to the scene. On his arrival he saw appellee's car with its front end up in the air. The car was dangling on a guide wire in the northeast section of the parking lot. Sgt. Slocum testified that when he arrived, Trooper Hayes was already on the scene and appellee was seated in his cruiser.
 {¶ 7} The sergeant opened the rear door to the trooper's cruiser and asked appellee to exit the vehicle which he did. He asked appellee if he was injured and he said he was not. Appellee was stumbling as he exited the vehicle. He had difficulty maintaining his balance and had a strong odor of alcohol coming from his breath. His eyes were glassy and bloodshot.
 {¶ 8} While they were walking toward his cruiser, the sergeant told appellee he was lucky his vehicle did not roll over, and asked him how the car ended up on the guide post. Appellee said, "well, I thought the driveway was wider." Sgt. Slocum asked appellee to sit in his cruiser until the investigating officer arrived. The sergeant testified that when he placed appellee in his cruiser, he was not arresting him; rather, he was holding him pending investigation. *Page 4 
 {¶ 9} Subsequently, Deputy Ronald Siebeneck of the Ashtabula County Sheriffs Office arrived at the scene at 1:40 a.m. At that time appellee was still sitting in Sgt. Slocum's cruiser. Trooper Hayes and Sgt. Slocum advised Deputy Siebeneck that appellee had been driving the vehicle that was on the guide wire. After he concluded his investigation, Deputy Siebeneck "removed [appellee] from Sergeant Slocum's vehicle and * * * put him in [his] vehicle * * *." He testified appellee had a strong odor of alcohol on his breath. The deputy then arrested appellee and transported him to the Ashtabula County Justice Center where he administered a breathalyzer test and field sobriety tests.
 {¶ 10} Following the presentation of the evidence, the trial court found that, based on the facts and circumstances of the case, there was probable cause to arrest appellee for OVI. In support, the court noted appellee's vehicle was found dangling on a guide wire and appellee was hiding from Trooper Hayes. The court further noted that appellee admitted to Sgt. Slocum that he thought the driveway was wider than it was. The court inferred from this statement that appellee admitted he was operating the vehicle at the time of the crash. The court also noted the evidence of a strong odor of alcohol on appellee's breath, his stumbling, and staggering.
 {¶ 11} However, the trial court suppressed the results of the breathalyzer test because there was no evidence presented that the test was administered within three hours of the accident, as required by R.C.4511.19(D)(1)(b). Despite appellant's argument to the contrary, the court found appellee had provided notice in his motion to suppress that he was challenging the admissibility of these test results.
 {¶ 12} The court also found that appellee was subjected to custodial interrogation, and that because he was not given the warnings required by Miranda v. *Page 5 Arizona (1966), 384 U.S. 436, the oral statements he made to Trooper Hayes would be suppressed.
 {¶ 13} In its judgment entry, dated June 25, 2007, the court stated, "All oral statements of defendant to * * * Tpr. Hayes are suppressed. Breath test result is suppressed. * * * Motion to suppress overruled in all other respects."
 {¶ 14} Appellant appeals the trial court's judgment entry, asserting two assignments of error. For his first assigned error, appellant states:
 {¶ 15} "THE TRIAL COURT ERRED IN SUPPRESSING THE RESULTS OF APPELLEE'S BREATH TEST, AS THIS ISSUE WAS NOT RAISED WITH SUFFICIENT PARTICULARITY IN APPELLEE'S MOTION TO SUPPRESS."
 {¶ 16} Appellant argues that appellee failed to raise the issue of the admissibility of his breathalyzer test results with sufficient particularity in his motion to suppress, and that, as a result, appellant was not required to prove the test was properly administered. We do not agree.
 {¶ 17} When we consider an appeal of a ruling on a motion to suppress, we must accept the trial court's factual determinations if they are supported by competent, credible evidence. We determine only whether the findings of fact were against the manifest weight of the evidence.State v. Bokesch, 11th Dist. No. 2001-P-0026, 2002-Ohio-2118, at ¶ 12-13. Accepting those facts as true, we review the trial court's application of the law to those facts de novo and independently determine whether the facts meet the appropriate legal standard. Id.
 {¶ 18} A defendant moving for an order to suppress evidence has the initial burden to state with factual specificity the grounds of his challenge to the evidence. State v. Kuzma (Dec. 3, 1993), 11th Dist. No. 93-P-0019, 1993 Ohio App. LEXIS 5768, *Page 6 
*4, citing Xenia v. Wallace (1988), 37 Ohio St.3d 216. This is because there is a presumption of regularity of the actions of law enforcement officials, and there is a need for the prosecutor and the court to be put specifically on notice as to what the defendant is challenging.State v. Hensley (1992), 75 Ohio App.3d 822, 828-829. This initial burden must be satisfied before the state's burden of proof is invoked.Kuzma, supra.
 {¶ 19} Appellant argues appellee failed to put the state on notice that he was challenging the results of the breathalyzer test. As a result, appellant argues it was not required to prove the test complied with the statutory requirement that it be administered within three hours of the crash.
 {¶ 20} Appellant argues that appellee's motion was insufficient to provide it with notice that he was relying on R.C. 4511.19(D)(1)(b) as the basis of his motion. That section provides:
 {¶ 21} "In any criminal prosecution * * * for a violation of division (A) or (B) of this section * * *, the court may admit evidence on the concentration of alcohol * * * in the defendant's * * * breath * * * at the time of the alleged violation as shown by chemical analysis of the substance withdrawn within three hours of the time of the alleged violation. * * *"
 {¶ 22} Appellant argues that appellee merely "mentioned" the three-hour time limit set forth at R.C. 4511.19(D)(1)(b), and that this was insufficient to provide it with notice of the grounds of his challenge. However, appellee's motion to suppress did more than merely mention this rule. In his motion to suppress, appellee moved for the suppression of various pieces of evidence, including "[a]ny and all * * * results * * * of * * * chemical tests." In support of his motion, appellee argued in his attached memorandum that "there is no evidence of the exact time of the traffic accident. Accordingly, the State *Page 7 
cannot establish that the BAC Datamaster test was conducted within three (3) hours of the time of the accident. * * *" Appellee further argued in his memorandum that "any chemical tests conducted after Defendant was taken into custody, should be suppressed." Finally, in his "Conclusion," appellee stated: "Defendant respectfully requests that this Court * * * suppress any and all evidence obtained from Defendant after the initial stop, including * * * the results of any chemical tests." Thus, contrary to appellant's argument, appellee did not merely mention the three-hour rule. He argued the state could not establish the breathalyzer test was administered within the required three-hour time limitation, and that, as a result, the test results should be suppressed.
 {¶ 23} We are not persuaded by the argument of appellant's counsel that, because three assistant prosecutors in his office read appellee's motion and did not understand appellee was challenging the results of the breathalyzer test, we should consider this as evidence that appellee's motion was not sufficient to provide notice concerning his challenge to the admissibility of that test. First, there is no evidence in the record to support this argument. Further, the alleged failure of three assistant prosecutors to identify an argument in a brief is no evidence the issue was not raised if it clearly was. As the trial court so cogently stated, "There's a specific reference to the three-hour thing, page three of the motion. * * * It says they're moving to suppress any and all results of * * * chemical tests. And she talks about the three hours in there. That's adequate notice. That's part of this case, the three-hour issue."
 {¶ 24} Further, we do not agree with appellant's contention that, in order for appellee to provide sufficient notice of the claimed violation, he was required to cite the pertinent statutory or administrative code section allegedly violated. Appellee's reference to the evidence challenged, i.e., the results of the breathalyzer test, and his *Page 8 
explanation of the specific statutory requirement violated by police was sufficient to put appellant on notice that appellee was challenging the admissibility of the breathalyzer test results and the grounds in support.
 {¶ 25} Appellant's reliance on this court's holding in State v.Dwyer, 11th Dist. No. 2001-L-075, 2002-Ohio-710, is misplaced. In that case this court held that the defendant's argument that his breathalyzer test results should have been suppressed because the police "did not comply with the Ohio Department of Health regulations" was too general to put the state on notice of the basis of the challenge. Id. at *5.
 {¶ 26} It does not escape our attention that all three officers testified they did not know when the accident occurred. As a result, there is no indication in the record that, even if it had attempted to do so, the state could have proven the breathalyzer test was administered in compliance with the three-hour rule. Trooper Hayes testified he did not know what time the crash occurred. Further, Sgt. Slocum testified:
 {¶ 27} "Q. And as part of that dispatch, were you advised of what time the accident occurred?
 {¶ 28} "A. No.
 {¶ 29} "Q. And did you at any time ask Mr. Steerman what time the accident occurred?
 {¶ 30} "A. No."
 {¶ 31} Finally, Deputy Siebeneck testified:
 {¶ 32} "Q. Okay. So it would be fair to say that you have no idea what time the crash actually occurred?
 {¶ 33} "A. Yes, ma'am." *Page 9 
 {¶ 34} There is therefore no basis for appellant to argue, as it does, that "[b]ecause the crash occurred in a public parking lot, * * * the trial court could have readily found that the crash happened at or around the time it was reported and officers were dispatched, which was approximately 1:00 a.m." Appellant presented no evidence as to when the crash occurred. Thus, any such finding on the part of the trial court would not have been supported by competent, credible evidence in the record. Since all three officers testified they did not know when the crash happened and the state failed to present any other evidence on this issue, we fail to see how the court could have found the crash occurred at 1:00 a.m.
 {¶ 35} We therefore hold that appellee's motion to suppress provided sufficient notice to the prosecutor and the trial court that, among his various challenges to the evidence, he was challenging the admissibility of the breathalyzer test because the state could not satisfy the three-hour requirement. We further hold that, based upon this notice, the burden of proof shifted to the state to demonstrate the police complied with R.C. 4511.19(D)(1)(b) in administering the breathalyzer test.
 {¶ 36} Appellant concedes it failed to present any evidence as to when the crash occurred or when the breathalyzer test was administered. It therefore failed to meet its burden to prove the test was administered in compliance with R.C. 4511.19(D)(1)(b). We further hold that because appellant failed to meet its burden of proof, the trial court did not err in ordering the suppression of the breathalyzer test results.
 {¶ 37} Appellant's first assignment of error is without merit.
 {¶ 38} For his second assignment of error, appellant asserts:
 {¶ 39} "THE TRIAL COURT ERRED AS A MATTER OF LAW IN SUPPRESSING APPELLEE'S STATEMENTS." *Page 10 
 {¶ 40} Under this assigned error, appellant argues the trial court erred in finding that appellee's oral statements to Trooper Hayes were the result of custodial interrogation. We do not agree.
 {¶ 41} A defendant has the constitutional right against self-incrimination under both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. The state may not use statements resulting from a custodial interrogation of the defendant unless it demonstrates the use of certain procedural safeguards to secure the privilege against self-incrimination.Miranda, supra.
 {¶ 42} The issue of what constitutes custodial interrogation is a mixed question of fact and law, which we review to determine whether the trial court properly applied the law to the facts before it. State v.Harris (November 3, 1992), 2d Dist. No. 13279, 1992 Ohio App. LEXIS 5585, *17-*18.
 {¶ 43} In California v. Beheler (1983), 463 U.S. 1121, the United States Supreme Court held that "although the circumstances of each case influence a determination of whether a suspect is `in custody' for purpose of receiving Miranda protection, the ultimate inquiry is simply whether there is a "formal arrest or restraint on freedom of movement" of a degree associated with a formal arrest." Id. at 1125.
 {¶ 44} In Berkemer v. McCarty (1984), 468 U.S. 420, the Supreme Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute "custodial interrogation" under the rule announced in Miranda, supra. See Berkemer, supra, 335-340. Although an ordinary traffic stop limits the "`freedom of action'" of the detained motorist and imposes certain pressures on the motorist to answer questions, such pressures do not sufficiently impair the motorist's exercise of his privilege against self-incrimination to require that he be warned of his constitutional *Page 11 
rights. Id. A traffic stop is usually brief, and the motorist expects that, while he may be given a citation, in the end he most likely will be allowed to continue on his way. Id. at 438. Moreover, the typical traffic stop is conducted in public, where "[p]assersby, on foot or in other cars, witness the interaction of the officer and motorist." Id. Therefore, the atmosphere surrounding it is substantially less "police dominated" than that surrounding the kinds of interrogation at issue inMiranda. However, "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him `in custody' for practical purposes, he is entitled to the full panoply of protections prescribed by Miranda." Id. at 440. A policeman's unarticulated plan has no bearing on the question whether a suspect was `in custody' at a particular time; the only relevant inquiry is how a reasonable [person] in the suspect's position would have understood his situation." Id. at 442.
 {¶ 45} In explaining the rationale for its opinion, the Court noted that detention of a motorist pursuant to a traffic stop is usually temporary and brief. The vast majority of roadside detentions last only a few minutes. The Court further noted that circumstances associated with a typical traffic stop are not such that the motorist feels completely at the mercy of the police. The typical traffic stop is public. Passersby on foot or in other cars can witness the interaction between officer and motorist. This reduces the ability of policemen to use illegitimate means to elicit self-incriminating statements and diminishes the motorist's fear that if he does not cooperate, he will be subjected to abuse.
 {¶ 46} In Pennsylvania v. Bruder (1988), 488 U.S. 9, the Supreme Court held that an ordinary traffic stop during which the police officer asked the driver a modest number of questions at a location visible to passing motorists did not involve custody for *Page 12 
purposes of Miranda. The Court noted its holding in Berkemer applied only to ordinary traffic stops, and observed a motorist "might properly" be found to have been placed "in custody" for purposes ofMiranda safeguards where he was detained for over one-half hour and subjected to questioning while in a patrol car. Bruder, supra, at 11, f.n. 2. The Court noted that Berkemer applies only to "ordinary traffic stops" and not to the "unusual traffic stop" where a motorist is subjected to "prolonged detention" while in a patrol car.
 {¶ 47} In State v. Farris, 109 Ohio St.3d 519, 2006-Ohio-3255, the defendant was stopped for speeding. The officer smelled marijuana in the defendant's vehicle and decided to search it. In order to perform the search, the officer asked the defendant to sit in the front seat of his cruiser. While sitting in the front seat with the defendant, the officer disclosed to the defendant that he smelled marijuana, and was going to search his vehicle. Without advising him of the Miranda warnings, the officer then asked if the defendant had any drugs or paraphernalia in the vehicle and the defendant admitted he had a marijuana pipe in the trunk. The defendant was charged with possession of drug paraphernalia, and, while the case was pending, the defendant filed a motion to suppress. The trial court denied the motion, and the defendant was convicted. The appellate court affirmed and the Supreme Court of Ohio reversed.
 {¶ 48} The Court in Farris held the admissions should have been suppressed because they were made during custodial interrogation prior to the required Miranda warnings. The court held that, pursuant toBerkemer, although a motorist who is temporarily detained as the subject of an ordinary traffic stop is not "in custody" for purposes ofMiranda, if that person is thereafter subjected to treatment that renders him "in custody" for practical purposes, he is entitled to the warnings prescribed by Miranda. In holding the officer's treatment of the defendant after the original traffic stop placed *Page 13 
him "in custody" for practical purposes, the Court noted the defendant was not free to leave the scene as the officer had taken his car keys and the defendant "reasonably believed that he would be detained at least as long as it would take for the officer to search his automobile." Id. at 522. Further, the officer asked the defendant to sit in the front seat of his cruiser. Next, the defendant's entry into the cruiser was not based on the original stop, i.e., excessive speed, but rather was based on the officer's detection of the scent of marijuana. Thus, the officer was investigating a new offense when he placed the defendant in the cruiser. Referring to the test in Berkemer, the Supreme Court held a reasonable man in Farris' position would have understood he was "in custody" when he made his statements.
 {¶ 49} In the case sub judice, in suppressing the statements made by appellee to Trooper Hayes, the court found that the statements were made while appellee was in custody. The court found that the trooper was required to give appellee the warnings required by Miranda, and that since he did not, appellee's statements were suppressed. We must therefore determine whether the court correctly applied the law to the facts of this case.
 {¶ 50} First, we note that Trooper Hayes found appellee's vehicle dangling on a guard wire leading to a telephone pole and appellee hiding behind a bush. Next, appellee came out from behind the bush and said, "okey, you got me." At that time appellee was staggering and his speech was slurred. His eyes were bloodshot and glassy, and he had a strong odor of alcohol on his breath. Based upon these facts, the trooper had probable cause to arrest appellee for OVI. As the trial court found: "Because of the facts and circumstances * * *, I find there's probable cause * * *. *Page 14 
 {¶ 51} Trooper Hayes then placed appellee in the rear of his police cruiser and began questioning him. The trooper testified that when he placed appellee in his cruiser, he was not free to leave. Moreover, appellee's vehicle was inoperable, and the trooper indicated at least by implication that he was required to remain in the cruiser even after the trooper had completed his questioning.
 {¶ 52} When Sgt. Slocum arrived, he placed appellee in his cruiser. The sergeant testified he told appellee he would have to sit in his cruiser until the investigator arrived. Appellee thus had reason to believe he would be detained at least as long as it would take for the officers to complete their investigation. At 1:40 a.m., Deputy Sheriff Siebeneck arrived on the scene. After being informed by the other two officers that appellee was involved in a crash and determining that he appeared to be intoxicated, the deputy removed appellee from Sgt. Slocum's vehicle, arrested him, and placed him in the back of his cruiser. Appellee was thus detained in Trooper Hayes' patrol car and then Sgt Slocum's cruiser for over 40 minutes until Deputy Siebeneck arrived. Appellee then remained in the sergeant's cruiser until the investigation was concluded, at which time appellee was removed from the sergeant's cruiser, arrested and transported to the Ashtabula County Justice Center.
 {¶ 53} Based upon these facts, the trial court found appellee was not questioned pursuant to a routine traffic stop. By the time he was placed in the trooper's cruiser, he had probable cause to arrest appellee for OVI. The trooper's questioning was pertinent to appellee's OVI violation. Further, the questioning did not occur in full view of the public. To the contrary, appellee was "placed" in the rear of the trooper's patrol car and later in Sgt. Slocum's cruiser. Next, while he was not told he was being arrested, the trooper testified appellee was not free to leave and his actions were consistent with this *Page 15 
determination. Moreover, appellee was not merely detained for a few minutes. Appellee was required to remain in the back seat of Trooper Hayes' cruiser until Sgt. Slocum arrived and removed him from the trooper's patrol cruiser and placed him in his cruiser. Then, after being detained in two police cruisers for over 40 minutes, Deputy Siebeneck arrived at the scene, conducted his investigation and when it was concluded, removed appellee from Sgt. Slocum's cruiser and then placed him in his cruiser and transported him to the Justice Center.
 {¶ 54} Based upon the foregoing, we hold a reasonable person in appellee's position would have understood himself/herself to be in custody of a police officer at the time of his/her questioning by police. We therefore hold the trial court did not err in finding that appellee's statements to Trooper Hayes while in the back of his cruiser were the product of custodial interrogation and that since the trooper did not advise appellee of his Miranda rights, they should be suppressed.
 {¶ 55} We note that in the trial court's judgment entry, the court suppressed all oral statements made to Trooper Hayes. From our review of the record and controlling case law, we hold the trial court meant to suppress only those statements of appellee made to Trooper Hayes in the trooper's cruiser. Such statements were admissible either as not the result of custodial interrogation or pursuant to Berkemer, supra. The court did not mean to suppress the oral statements made to the trooper prior to appellee being placed in the trooper's cruiser. The trial court's judgment entry is therefore modified to be consistent with this holding. As modified, the court's judgment entry shall state, "All oral statements of defendant to Trooper Hayes after being placed in his cruiser are suppressed." *Page 16 
 {¶ 56} Further, we note appellee argues in his appellate brief that because he was still in custody when he made statements to Sgt. Slocum, the trial court's suppression order should be extended to any statements appellee made to the sergeant. However, appellee failed to file a cross assignment of error in this regard, and the issue is therefore waived. Consequently, the statements made to Sgt. Slocum are not part of the court's judgment, and may not be suppressed.
 {¶ 57} Appellant's second assignment of error is without merit.
 {¶ 58} For the reasons stated in the Opinion of this court, the assignments of error are without merit, and it is the judgment and order of this court that the judgment of the Ashtabula County Court, Eastern Division, is modified and affirmed as modified.
 DIANE V. GRENDELL, P.J., MARY JANE TRAPP, J., concur. *Page 1