OPINION
{¶ 1} Appellant, Robert W. Kesler, appeals from the November 21, 2007 judgment entry of the Portage County Court of Common Pleas, in which he was sentenced for trafficking in marijuana and possession of marijuana.
 {¶ 2} On November 8, 2001, appellant was indicted by the Portage County Grand Jury on three counts: count one, trafficking in marijuana, a felony of the third degree, in violation of R.C. 2925.03; count two, possession of marijuana, a felony of the *Page 2 
third degree, in violation of R.C. 2925.11(A) and (C)(3)(d); and count three, possessing criminal tools, a felony of the fifth degree, in violation of R.C. 2923.24(A) and (C). Appellant entered a not guilty plea at his arraignment on November 9, 2001.
 {¶ 3} On January 11, 2002, appellant filed a motion to suppress. A suppression hearing was held on March 15, 2002.
 {¶ 4} At that hearing, Deputy Patrick Burns ("Deputy Burns") with the Portage County Sheriff's Office, testified for appellee, the state of Ohio, that he was on duty on October 31, 2001. Deputy Burns indicated that he was monitoring westbound traffic from inside of his marked cruiser on Interstate 76 near State Route 225 at about 4:00 a.m. He observed appellant's vehicle pass a semi truck, then return to the right lane of travel. As appellant's car returned to the right lane, Deputy Burns said that it "went clear off the right side of the road almost wrecking off the side of the road." Believing that appellant was intoxicated or asleep, Deputy Burns followed the vehicle for about three minutes, indicating that it went off the right side of the road three additional times. Deputy Burns stated that appellant was driving seventy miles per hour and slowed to under fifty miles per hour, which he thought was "odd." At that time, Deputy Burns conducted a traffic stop of appellant's vehicle.
 {¶ 5} Upon approaching the automobile, Deputy Burns immediately smelled an odor of burnt marijuana. He asked appellant if he had a driver's license. Appellant replied that he did not because it was suspended, which was confirmed by dispatch. Appellant provided an Ohio identification card. According to Deputy Burns, appellant informed him that he was traveling from New York to Dayton, Ohio to visit his sick father. Deputy Burns inquired whether appellant had any weapons or drugs in his *Page 3 
vehicle. Appellant denied having any weapons, but after being asked about drugs, Deputy Burns testified that appellant "immediately paused and put his head down two or three seconds and didn't answer * * *." Appellant then denied having any drugs in the car. Deputy Burns informed him that he was going to walk his canine around the automobile. In response, Deputy Burns said that appellant immediately stated, "`Sir, there is no need for you to do that.' `I have two and a half — a little over two pounds of marijuana sitting here on my seat * * * in my duffle bag.'" At that time, Deputy Burns placed appellant under arrest. Law enforcement officers subsequently searched appellant's vehicle and found some drug paraphernalia.
 {¶ 6} Following the hearing, the trial court overruled appellant's motion to suppress.[1] The trial court found that Deputy Burns had sufficient probable cause to stop the vehicle. The trial court ruled that the odor of marijuana and the fact that appellant volunteered that there was over two pounds of marijuana in the vehicle provided sufficient probable cause to search the vehicle. The trial court suppressed any statement made by appellant after he was placed under arrest.
 {¶ 7} On March 29, 2002, appellant withdrew his not guilty plea and entered a written plea of guilty to possession of marijuana, a felony of the fourth degree, in violation of R.C. 2925.11. The trial court accepted appellant's guilty plea, entered a nolle prosequi on the remaining counts, and referred the matter to the Adult Probation Department for a presentence investigation report. *Page 4 
 {¶ 8} On June 25, 2002, appellant filed a motion to vacate his guilty plea. Pursuant to its June 27, 2002 judgment entry, the trial court granted appellant's motion to vacate his guilty plea and scheduled the case for trial.
 {¶ 9} On September 18, 2002, the trial court found, upon its own motion, that count two of the indictment, possession of marijuana, is a felony of the fifth degree.
 {¶ 10} A jury trial commenced on September 18, 2002.
 {¶ 11} Following the trial, the jury returned a guilty verdict on count one, trafficking in marijuana, a felony of the fourth degree, and count two, possession of marijuana, a felony of the fifth degree, finding that the amount was more than 200 grams but less than 1,000 grams.[2]
 {¶ 12} Appellant remained free on bond until sentencing. On October 4, 2002, the state filed a motion to increase bond.[3] Appellant filed an objection that same date. A hearing was held on the state's motion on October 28, 2002. Appellant failed to appear and the trial court issued a capias warrant for his arrest. Approximately four years later, New York authorities arrested appellant on the Portage County warrant and he was returned to Ohio.
 {¶ 13} Pursuant to its November 21, 2007 judgment entry, the trial court sentenced appellant to sixteen months in prison on count one, trafficking in marijuana, and eleven months on count two, possession of marijuana, to be served concurrently, with credit for ten days he spent in the Portage County Jail. The trial court also *Page 5 
suspended appellant's driver's license for six months. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 14} "[1.] The facts as presented do not support a sufficient, articulable suspicion under Terry v. Ohio to warrant an investigatory stop.
 {¶ 15} "[2.] The trial court erred in overruling [appellant's] motion to suppress statements made to Deputy Burns of the Portage County Sheriff's Office, as these statements were obtained in violation ofMiranda v. Arizona.
 {¶ 16} "[3.] The trial court erred to the prejudice of [appellant] by failing to credit him for time served in the New York prison, while awaiting delivery to Portage County, Ohio, for his failure to appear for sentencing in the Portage County Court of Common Pleas."
 {¶ 17} In his first assignment of error, appellant argues that the facts do not support a sufficient, articulable suspicion to warrant an investigatory stop.
 {¶ 18} At a hearing on a motion to suppress, the trial court functions as the trier of fact. Accordingly, the trial court is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. State v. Mills (1992),62 Ohio St.3d 357, 366; State v. Smith (1991), 61 Ohio St.3d 284, 288.
 {¶ 19} On review, an appellate court must accept the trial court's findings of fact if they are supported by some competent and credible evidence. State v. Retherford (1994), 93 Ohio App.3d 586, 592. After accepting the factual findings as true, the reviewing court must then independently determine, as a matter of law, whether the applicable legal standard has been met. Id. See, also, State v. Swank, 11th Dist. No. 2001-L-054, 2002-Ohio-1337, at ¶ 11. *Page 6 
 {¶ 20} "`Initially, a law enforcement officer may momentarily stop and detain an individual without a warrant (a Terry stop) when the officer has a reasonable suspicion based on specific, articulable facts that criminal activity has just occurred or is about to take place.'State v. Evans (1998), 127 Ohio App.3d 56, 60 * * *, citing Terry v.Ohio (1968), 392 U.S. 1 * * *. This is an exception to the warrant requirement under the Fourth Amendment. Id. Whether police have a "reasonable suspicion" is gleaned from considering the totality of the circumstances.' State v. Andrews (1991), 57 Ohio St.3d 86, 87 * * *." (Parallel citations omitted.) State v. Maloney, 11th Dist. No. 2007-G-2788, 2008-Ohio-1492, at ¶ 22.
 {¶ 21} "`* * * [A] minor violation of a traffic regulation (* * *) that is witnessed by a police officer is, standing alone, sufficient justification to warrant a limited stop for the issuance of a citation.'" State v. Montes, 11th Dist. No. 2003-L-072, 2004-Ohio-6475, at ¶ 19, quoting State v. Yemma (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, at 6-8.
 {¶ 22} "[A]lthough the appellate courts of this state are in general agreement that not every edge line crossing by a motorist permits policeto conduct a traffic stop, instances of erratic or substantial roadwayline crossing will vest a police officer with probable cause to performsuch a stop." (Emphasis added.) State v. Schofield (Dec. 10, 1999), 11th Dist. No. 98-P-0099, 1999 Ohio App. LEXIS 5945, at 9. "* * * There must be some indicia of erratic driving to warrant an investigative stop beyond some incident of modest or minimal weaving in one's lane alone."State v. Spikes (June 9, 1995), 11th Dist. No. 94-L-187, 1995 Ohio App. LEXIS 2649, at 10. Thus, "police officers may lawfully stop a motor vehicle solely on the basis that the vehicle is weaving, but only *Page 7 
when the extent of the weaving [is] what can be described assubstantial." (Emphasis added.) Willoughby v. Zvonko Mazura (Sept. 30, 1999), 11th Dist. No. 98-L-012, 1999 Ohio App. LEXIS 4642, at 8.
 {¶ 23} In the case at bar, the trial court properly found that Deputy Burns had sufficient probable cause to stop the vehicle. Also, the trial court correctly ruled that the odor of marijuana and the fact that appellant volunteered that there was over two pounds of marijuana in the car gave Deputy Burns sufficient probable cause to search the vehicle. Thus, the trial court properly overruled appellant's motion to suppress evidence.
 {¶ 24} Here, Deputy Burns observed four marked lanes traffic violations and erratic driving. Again, at about 4:00 a.m., Deputy Burns saw appellant's vehicle pass a semi truck and return to the right lane of travel. As his car returned to the right lane, Deputy Burns testified that it "went clear off the right side of the road almost wrecking off the side of the road." Believing that appellant was either intoxicated or asleep, Deputy Burns followed his vehicle for approximately three minutes and witnessed it drive off the right side of the road three additional times. Deputy Burns stated that appellant was driving seventy miles per hour and slowed to under fifty miles per hour, which he thought was "odd." The facts presented support a sufficient, articulable suspicion under Terry to warrant an investigatory stop. Thus, the totality of the circumstances support the trial court's finding that Deputy Burns had probable cause to stop appellant's vehicle.
 {¶ 25} Appellant's first assignment of error is without merit. *Page 8 
 {¶ 26} In his second assignment of error, appellant contends that a recitation of the Miranda rights was required during his traffic stop.
 {¶ 27} This court stated in State v. Steerman, 11th Dist. No. 2007-A-0054, 2008-Ohio-1691, at ¶ 41-45:
 {¶ 28} "A defendant has the constitutional right against self-incrimination under both the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. The state may not use statements resulting from a custodial interrogation of the defendant unless it demonstrates the use of certain procedural safeguards to secure the privilege against self-incrimination.Miranda [v. Arizona (1966), 384 U.S. 436.]
 {¶ 29} "The issue of what constitutes custodial interrogation is a mixed question of fact and law, which we review to determine whether the trial court properly applied the law to the facts before it. State v.Harris (November 3, 1992), 2d Dist. No. 13279, 1992 Ohio App. LEXIS 5585, 17-18.
 {¶ 30} "In California v. Beheler (1983), 463 U.S. 1121 * * *, the United States Supreme Court held that `although the circumstances of each case influence a determination of whether a suspect is "in custody" for purpose of receiving Miranda protection, the ultimate inquiry is simply whether there is a `formal arrest or restraint on freedom of movement' of a degree associated with a formal arrest.' Id. at 1125.
 {¶ 31} "In Berkemer v. McCarty (1984), 468 U.S. 420 * * *, the Supreme Court held that roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute `custodial interrogation' under the rule announced in Miranda, supra. See Berkemer, supra, 335-340. Although an ordinary traffic stop limits the `"freedom of *Page 9 
action"' of the detained motorist and imposes certain pressures on the motorist to answer questions, such pressures do not sufficiently impair the motorist's exercise of his privilege against self-incrimination to require that he be warned of his constitutional rights. Id. A traffic stop is usually brief, and the motorist expects that, while he may be given a citation, in the end he most likely will be allowed to continue on his way. Id. at 438. Moreover, the typical traffic stop is conducted in public, where `(p)assersby, on foot or in other cars, witness the interaction of the officer and motorist.' Id. Therefore, the atmosphere surrounding it is substantially less `police dominated' than that surrounding the kinds of interrogation at issue in Miranda. However, `(i)f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him "in custody" for practical purposes, he is entitled to the full panoply of protections prescribed by Miranda.' Id. at 440. A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable (person) in the suspect's position would have understood his situation.' Id. at 442.
 {¶ 32} "In explaining the rationale for its opinion, the Court noted that detention of a motorist pursuant to a traffic stop is usually temporary and brief. The vast majority of roadside detentions last only a few minutes. The Court further noted that circumstances associated with a typical traffic stop are not such that the motorist feels completely at the mercy of the police. The typical traffic stop is public. Passersby on foot or in other cars can witness the interaction between officer and motorist. This reduces the ability of policemen to use illegitimate means to elicit self-incriminating statements and *Page 10 
diminishes the motorist's fear that if he does not cooperate, he will be subjected to abuse." (Parallel citations omitted.)
 {¶ 33} In the instant matter, again, after Deputy Burns stopped appellant and approached his vehicle, he noticed appellant (the only occupant) and immediately smelled an odor of burnt marijuana. According to Deputy Burns, appellant admitted that his driver's license was suspended, offered an identification card instead, and stated he was traveling from New York to Dayton. After Deputy Burns confirmed the suspension through dispatch, he asked appellant whether he had any weapons or drugs inside the vehicle. Appellant initially denied having either, until Deputy Burns indicated that his canine was going to walk around the vehicle. At that time, appellant admitted to having over two pounds of marijuana on his seat in his duffle bag. Law enforcement officers subsequently searched appellant's vehicle and found some drug paraphernalia.
 {¶ 34} Based on the facts presented, the traffic stop did not requireMiranda warnings. Also, the totality of the circumstances supports the trial court's finding that there was probable cause to search the vehicle.
 {¶ 35} The Supreme Court of Ohio has held that "the smell of marijuana, alone, by a person qualified to recognize the odor, is sufficient to establish probable cause to search a motor vehicle, pursuant to the automobile exception to the warrant requirement. There need be no other tangible evidence to justify a warrantless search of a vehicle." State v. Moore, 90 Ohio St.3d 47, 48.
 {¶ 36} Due to the smell of burnt marijuana coming from appellant's vehicle, Deputy Burns was justified in questioning him and did not violate the *Page 11 Fourth Amendment by further detaining him in order to conduct a warrantless search of his car. See State v. Farris, 109 Ohio St.3d 519,2006-Ohio-3255, at ¶ 12.
 {¶ 37} Appellant's second assignment of error is without merit.
 {¶ 38} In his third assignment of error, appellant alleges that the trial court erred by failing to credit him for time served in the New York prison, prior to being sentenced in Ohio.
 {¶ 39} R.C. 2967.191 provides in part:
 {¶ 40} "The department of rehabilitation and correction shall reduce the stated prison term of a prisoner * * * by the total number of days that the prisoner was confined for any reason arising out of the offense for which the prisoner was convicted and sentenced, including confinement in lieu of bail while awaiting trial, confinement for examination to determine the prisoner's competence to stand trial or sanity, and confinement while awaiting transportation to the place where the prisoner is to serve the prisoner's prison term."
 {¶ 41} This court stated in State v. Ashley, 11th Dist. No. 2006-L-134, 2007-Ohio-690, at ¶ 32:
 {¶ 42} "The power to determine the amount of jail credit an offender shall receive is generally within the purview of the trial court.State v. Struble, 11th Dist. No. 2005-L-115, 2006-Ohio-3417, at ¶ 9. The trial court's calculation may only be reversed for plain error. Id. Under the plain terms of R.C. 2967.191, an offender is only entitled to credit for time spent incarcerated relating to the offense for which he is convicted. `(* * *) (T)here is no jail-time credit for time served on unrelated offenses, even if that time *Page 12 
served runs concurrently during the pre-detention phase of another matter.' Struble at ¶ 11."
 {¶ 43} In the case sub judice, the trial court stated the following in its November 21, 2007 judgment entry:
 {¶ 44} "IT IS FURTHER ORDERED [appellant] shall receive credit for the ten (10) days he has spent in the Portage County Jail in the above styled offense(s). This credit included jail time up to the date of sentencing and does not include any subsequent time awaiting conveyance to the reception facility. That time is to be calculated by [the] reception facility."
 {¶ 45} The record establishes that appellant was arrested in November of 2001, and released on bond. As such, he accrued no pretrial confinement in Portage County in 2001, with respect to the instant case. Again, on September 20, 2002, the jury found appellant guilty, and he remained free on bond. Appellant failed to show for the hearing on the state's motion to increase his bond, and the trial court issued a capias warrant for his arrest. Apparently, appellant went to New York to await his sentencing hearing in Ohio. While in New York, he was arrested and convicted for criminal possession of weapons and criminal possession of marijuana. He was sentenced in New York and began serving a prison term in that state. Appellant was paroled on his New York case on November 16, 2007, immediately arrested by New York authorities, and held on the Portage County warrant. He was transported to Ohio and sentenced on November 20, 2007. Pursuant to its sentencing entry, the trial court ordered jail time credit for appellant's presentence confinement following his parole on his New York case. *Page 13 
 {¶ 46} The Ohio and New York offenses are unrelated. As such, appellant is not entitled to credit for time served on a sentence imposed for another offense. See Struble, supra, at ¶ 11.
 {¶ 47} Appellant's third assignment of error is without merit.
 {¶ 48} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Portage County Court of Common Pleas is affirmed. It is the further order of this court that costs are waived since appellant appears from the record to be indigent. The court finds there were reasonable grounds for this appeal.
CYNTHIA WESTCOTT RICE, J.,
TIMOTHY P. CANNON, J., concur.
[1] The trial court granted the oral motion of the prosecutor to amend count one of the indictment from a felony of the third degree to a felony of the fourth degree. Also, upon motion of the prosecutor, the trial court amended the indictment with respect to count two to read "more than 200 grams and less than 1,000 grams," thus, making it a felony of the fourth degree.
[2] At the close of the state's case, the trial court granted the motion of the defense to dismiss count three, possession of criminal tools.
[3] The state indicated that while out on bond awaiting sentencing, appellant was arrested in Oneida County, New York, for discharging a firearm in a liquor establishment, as well as other charges, and was in the Oneida County Jail. *Page 1